*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LABSER PLC and NORTHLAND RADIOLOGY, INC.,

        Plaintiffs-Appellants,

and

JOSHUA SIMPSON,

        Other Party,

v

FARMERS INSURANCE EXCHANGE,

        Defendant-Appellee.

FOR PUBLICATION
August 05, 2026
9:30 AM

No. 373765
Oakland Circuit Court
LC No. 2023-201239-NF

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

MARIANI, J.

In this case arising under the no-fault act, MCL 500.3101 *et seq.*, plaintiffs, Labser PLC and Northland Radiology, Inc., appeal by right the trial court's order granting reconsideration and summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendant, Farmers Insurance Exchange. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs provided medical treatment and services to Joshua Simpson after he was injured in a motor vehicle collision in May 2023. At the time of the collision, Simpson was driving an uninsured vehicle that his live-in girlfriend, Kiera Burgos, had purchased not more than two weeks prior. Simpson, Burgos, and their infant son were in the vehicle at the time of the collision. Defendant, who was assigned Simpson's claim for personal protection insurance (PIP) benefits under the Michigan Assigned Claims Plan (MACP), denied payment. Shortly thereafter, plaintiffs,

-1-

both as assignees to Simpson's right to recover PIP benefits and via the direct cause of action provided under MCL 500.3112, filed a complaint seeking PIP benefits from defendant.[1]

Following discovery, defendant moved for summary disposition under MCR 2.116(C)(10). According to defendant, plaintiffs could not recover PIP benefits because their claim for such necessarily hinged on Simpson's eligibility for PIP benefits and Simpson was ineligible, given his constructive ownership of the uninsured vehicle at the time of the collision. As evidentiary support, defendant provided, in relevant part, a copy of Simpson's application for PIP benefits and the transcript of Simpson's deposition. Specifically, defendant referred to answers on Simpson's application and his corresponding testimony that, prior to and at the time of the collision, he was the primary driver of the vehicle, had access to the vehicle's keys, put gas in the vehicle, contributed money toward the vehicle's maintenance, and did not have to ask for permission to use the vehicle. Defendant also noted Simpson's deposition testimony that, following the collision, he had arranged and managed the towing of the vehicle, as well as its subsequent sale and pickup for scrap.

In response, plaintiffs asserted that it was impossible for Simpson to have constructively owned the vehicle because he did not have a vested possessory interest in it or use of it for more than 30 days as required by MCL 500.3101(3)(*l*)(*i*). Plaintiffs further asserted that they could recover the PIP benefits at issue irrespective of whether Simpson was a constructive owner of the vehicle because MCL 500.3112, as interpreted in *Mota-Peguero v Falls Lake Nat'l Ins Co*, 350 Mich App 692, 700; 33 NW3d 912 (2024), allowed them to file a direct cause of action against defendant rather than "stand in the shoes of an injured person." In its reply, defendant asserted that caselaw made clear that, for a claimant to be deemed a constructive owner of a vehicle, MCL 500.3101(3)(*l*)(*i*) did not require the claimant to have had a vested possessory interest in the vehicle or actual physical possession or use of it for more than 30 days at the time of the collision. Following a hearing on the matter, the trial court issued an order denying defendant's motion for summary disposition, concluding that even if Simpson were an owner of the vehicle (which it was not convinced he was), plaintiffs, as "innocent" third parties "that provided services [to Simpson] on a good faith basis . . . [,] should be allowed to pursue their claim" directly under MCL 500.3112.

Defendant then filed a motion for reconsideration, asserting that the trial court committed palpable error by denying its motion for summary disposition because the court "applied an erroneous interpretation" of the relevant caselaw—namely, *Twichel v MIC Gen Ins Corp*, 469 Mich 524; 676 NW2d 616 (2004), which, according to defendant, was the controlling authority on the ownership issue. Defendant also pointed out that, during the pendency of the proceedings in this case, the trial court presiding over Simpson's separate action to recover PIP benefits from defendant in connection with the March 2023 collision had granted summary disposition to defendant because Simpson was a constructive owner of the vehicle and therefore ineligible to receive PIP benefits. Defendant asserted that, because Simpson was "barred from recovering no-fault benefits related to" his March 2023 collision, plaintiffs were "also precluded from recovery"

---

[1] Plaintiff Northland Radiology was not initially involved in this case but, pursuant to the parties' stipulation, plaintiff Labser amended its complaint to add Northland Radiology as a plaintiff.

since, even though they may bring an independent cause of action under MCL 500.3112, their "claim[s] still hinge[d] on [Simpson's] eligibility for benefits" under the no-fault act.

At the direction of the trial court, the parties filed supplemental briefing to address whether (and if so, how) the holding in *Mota-Peguero* applied to the facts of this case. Defendant asserted that *Mota-Peguero* was not applicable because that case involved rescission of an insurance policy after the insurance company determined that the claimant made material misrepresentations in her application for insurance, and it was undisputed that there was no insurance policy at issue in this case. In response, plaintiffs argued that *Mota-Peguero* was highly relevant and, in fact, dispositive because its interpretation of MCL 500.3112 established that they, as innocent healthcare providers, had an independent statutory right to recover PIP benefits irrespective of a claimant's insurance status. Plaintiffs further asserted that, because they had an independent statutory right to recover PIP benefits, the court order in Simpson's separate case concluding that Simpson was ineligible for PIP benefits had no bearing on the outcome of this case.

The trial court thereafter conducted a hearing to address the parties' filings. At the outset of the hearing, the court stated that, based on its "additional review" of caselaw and the facts of this case, Simpson was ineligible for PIP benefits because he was "a constructive owner of the vehicle," as "[h]e was the one operating it[,] [h]e had the keys," and "[h]e was involved in the scrap of it." The court then asked the parties to focus their arguments on whether "plaintiff[s] have an independent right to seek payment" irrespective of Simpson's ineligibility. Defendant acknowledged that MCL 500.3112 gave plaintiffs a statutory right to bring a direct claim to recover PIP benefits but asserted that the statute "d[id] not at all say that they can go forward [with their direct claim] if the [underlying] claimant is ineligible for [PIP] benefits." Defendant opined that, because plaintiffs' ability to recover PIP benefits was contingent on Simpson's eligibility and plaintiffs could not "establish that [Simpson] [wa]s entitled to [those PIP] benefits," plaintiffs "would have no ability to meet their burdens of proof" if their direct claim were to proceed to trial. Plaintiffs, meanwhile, maintained that Simpson was not an owner of the vehicle because he did not meet the statutory definition of that term under the no-fault act, and thus the court "was correct in its initial determination" in that regard. Plaintiffs also argued that, regardless, recent caselaw, including *Mota-Peguero*, established that their statutory right under MCL 500.3112 to bring a direct claim to recover PIP benefits was independent of Simpson's eligibility for those benefits, and they were therefore "entitled to [their] day in court[.]"

After considering the parties' arguments, the trial court granted defendant's motions for reconsideration and summary disposition. The court stated that it was "on the fence with this one" because the "pure language of [MCL 500.3112] could open the door for a provider to just initiate its own claim through [the MACP] for payment," but "then you . . . have the oddity of treatment being provided and paid for when the [underlying claimant] didn't qualify for it." The court concluded that defendant's substantive position ultimately "wins the argument," as the court did not "think there [wa]s a way to get to payment here for a third-party provider" in plaintiffs' position.

This appeal followed.

## II. STANDARDS OF REVIEW

We review "de novo a trial court's decision on a motion for summary disposition." *Bartalsky v Osborn*, 337 Mich App 378, 382; 977 NW2d 574 (2021). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and it is "properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cantina Enterprises II, Inc v Property-Owners Ins Co*, 349 Mich App 682, 689; 28 NW3d 800 (2024). All evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion," *id*. at 690, and "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6). A genuine issue of material fact does not exist unless "the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, 350 Mich App 478, 493; 32 NW3d 487 (2024). "To the extent [the] analysis requires the interpretation of . . . statutory language, our review is also de novo." *Barshaw v Allegheny Performance Plastics, LLC*, 334 Mich App 741, 747; 965 NW2d 729 (2020).

"We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015). A trial court abuses its discretion "when it makes an error of law" or otherwise renders a decision that "results in an outcome falling outside the range of principled outcomes." *Bradley v Progressive Marathon Ins Co*, 345 Mich App 126, 131; 3 NW3d 559 (2022) (quotation marks and citations omitted).

## III. SIMPSON'S OWNERSHIP OF THE VEHICLE

On appeal, plaintiffs first argue that the trial court erroneously concluded that Simpson was a constructive owner of the vehicle and was therefore ineligible to receive PIP benefits under the no-fault act for his injuries resulting from the May 2023 collision. Plaintiffs assert that, because Simpson did not meet the statutory definition of "owner," neither he nor they could be excluded from recovering PIP benefits, and the trial court reversibly erred by granting defendant's motions for reconsideration and summary disposition on that basis. We disagree.

Except under certain circumstances not relevant here, "the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of [PIP] benefits" under the no-fault act. MCL 500.3101(1). "A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident . . . [t]he person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by [MCL 500.3101 or MCL 500.3103] was not in effect." MCL 500.3113(b). "A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may claim [PIP] benefits through the" MACP under specified circumstances. MCL 500.3172(1). "A person who because of a limitation or exclusion in [MCL 500.3105 to MCL 500.3116] is disqualified from receiving [PIP] benefits under a policy otherwise applying to his accidental bodily injury is also disqualified from receiving benefits under the [MACP]." MCL 500.3173.

The no-fault act defines an "owner," in relevant part, as "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30

days." MCL 500.3101(3)(*l*)(*i*). "This subsection effectively establishes a form of constructive or de facto ownership even when the vehicle is titled in another's name." *Abdulla v Progressive Southeastern Ins Co*, ___ Mich ___; ___ NW3d ___ (2026) (Docket Nos. 167532; 167533); slip op at 11. Such a "broad definition" of ownership "prioritizes function over form" and reflects "the sound public policy imperative that users of motor vehicles maintain appropriate insurance for themselves as indicated by their actual patterns of usage." *Id*. at ___; slip op at 18-19 (cleaned up).

Correspondingly, our caselaw has construed the phrase " 'having the use' of a motor vehicle for purposes of defining 'owner' " to "mean[] using the vehicle in ways that comport with concepts of ownership." *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 492; 775 NW2d 151 (2009), quoting *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999) (quotation marks omitted). "[O]wnership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another." *Ardt*, 233 Mich App at 691. Accordingly, a "regular pattern of unsupervised usage" may support a finding of ownership under the statute, but a "spotty and exceptional pattern" of usage requiring permission may not. *Id*. Similarly, a genuine issue of material fact regarding ownership may exist where the record evidence indicates that the individual in question "only used the vehicle for [the title owner's] benefit." *Davis v Baldini*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 373696); slip op at 5. Ultimately, the focus of this ownership inquiry "must be on the nature of the person's right to use the vehicle" and whether that right "will remain in effect for more than thirty days," rather than whether that "person *actually* ha[d] used the vehicle" for more than that length of time. *Twichel*, 469 Mich at 530-532. See also *Abdulla*, ___ Mich at ___; slip op at 14 (reaffirming that, under this body of caselaw, "the focus must be on the nature of th[e] person's right to use the vehicle and whether that use is possessory or proprietary in a manner that comports with ownership").

Here, it is undisputed that, at the time of Simpson's collision, the subject vehicle was uninsured, was titled to Burgos, and had been purchased by Burgos less than two weeks prior. The parties' dispute thus hinges on whether Simpson constituted an "owner" of the vehicle under MCL 500.3101(3)(*l*)(*i*) at the time of the collision. "As a general rule, the question of ownership is one of fact that is to be decided by the factfinder." *Davis*, ___ Mich App at ___; slip op at 4 (cleaned up). We agree with the trial court, however, that the record in this case, when viewed in the light most favorable to plaintiffs, see *id*. at ___; slip op at 4, reveals no genuine issue of material fact that Simpson was an owner of the uninsured vehicle at the relevant time and thus ineligible for PIP benefits under the no-fault act.

As below, plaintiffs assert that Simpson was not an "owner" for purposes of the no-fault act because he "did not use the vehicle for the statutory period and did not have permanent and exclusive right of use that exceeded the statutory period." But as discussed, Simpson did not need to have actually used the vehicle for greater than 30 days to be considered its "owner" under MCL 500.3101(3)(*l*)(*i*). See *Twichel*, 469 Mich at 530-532. And contrary to plaintiffs' suggestion, there is no requirement—either in the plain language of MCL 500.3101(3)(*l*)(*i*) or in published authority interpreting it—that a person have exclusive use of a vehicle to be deemed its "owner." Rather, it is well established that more than one person can be deemed an "owner" of a vehicle for purposes of the no-fault act. *Abdulla*, ___ Mich at ___; slip op at 10-11; see also *Ardt*, 233 Mich App at

-5-

691-692; *Abraham v State Farm Mut Auto Ins Co*, 342 Mich App 475, 483; 995 NW2d 849 (2022); *Chop v Zielinski*, 244 Mich App 677, 681; 624 NW2d 539 (2001).

Plaintiffs also assert that Simpson is not an "owner" under MCL 500.3101(3)(*l*)(*i*) and *Twichel*'s interpretation thereof because there was no written agreement between Simpson and Burgos establishing Simpson's contemplated use of the vehicle within the meaning of the statute—namely, that Simpson would have use of the vehicle for greater than 30 days. But neither the statute's plain language nor *Twichel*'s interpretation of it requires any such agreement to be in writing. See MCL 500.3101(3)(*l*)(*i*); *Twichel*, 469 Mich at 531, 532 n 5 (noting that the subject "arrangement" qualifying the decedent as an "owner" of the vehicle within the meaning of MCL 500.3101(3)(*l*)(*i*) constituted an " 'installment sale contract' " that "d[id] not require a writing" to be valid). Additionally, the " 'or otherwise' language in MCL 500.3101(3)(*l*)(*i*) 'plainly indicates that the Legislature intended this subsection to apply in situations other than those involving leases or rentals.' " *Abdulla*, ___ Mich at ___; slip op at 14 n 35, quoting *Chop*, 244 Mich App at 682; see also, e.g., *Abraham*, 342 Mich App at 483 (citing *Chop* approvingly for this proposition); *Ardt*, 233 Mich App at 690-691 (considering whether the plaintiff's son was an "owner" of the subject vehicle within the meaning of MCL 500.3101(3)(*l*)(*i*) under circumstances not involving a lease, rental, or similar written agreement). And as our Supreme Court has more generally explained, "The Legislature included the phrase 'or otherwise' to provide a catchall category to ensure that those who routinely possess and use vehicles in a proprietary manner are insured." *Abdulla*, ___ Mich at ___; slip op at 14. We find no grounds to read into this statutory language a written-agreement requirement.

With these threshold interpretive points in mind, we, like the trial court, see no genuine issue of material fact that Simpson was a constructive owner of the vehicle at the time of the collision. Beyond pointing to Simpson's use of the vehicle for less than 30 days and the absence of a written agreement, plaintiffs did not put forth any proofs below to support their position that Simpson was not an "owner" within the meaning of MCL 500.3101(3)(*l*)(*i*). Defendant's offered proofs, meanwhile, uniformly demonstrated that Simpson had a "right to use the vehicle" that was "possessory or proprietary in a manner that comports with ownership." *Abdulla*, ___ Mich at ___; slip op at 14. As noted, defendant primarily relied on Simpson's deposition testimony and the answers Simpson provided in his application for PIP benefits. In his application, Simpson listed Burgos as the registrant of the vehicle but listed both himself and Burgos as the owner. Simpson also stated in his application and deposition that, at the time of the collision, he and Burgos lived together with their son and that he was the primary driver of the vehicle, had access to the vehicle's keys, put gas in the vehicle, contributed money toward the vehicle's maintenance, and did not have to ask for permission to use the vehicle. Simpson further testified at his deposition that he kept the primary key to the vehicle in his pocket and the spare key in a drawer in his bedroom; that Burgos did not have a driver's license at the time of purchasing the vehicle, and he and Burgos correspondingly agreed to his primary use of the vehicle so that Burgos's ability to eventually obtain her license would not get "messed up"; that he used the vehicle in connection with work he was doing on a house he had purchased; and that he arranged and managed the towing and subsequent sale and pickup of the vehicle for scrap following the collision.

Even when viewed in the light most favorable to plaintiffs, these proofs demonstrate that, pursuant to an arrangement between Simpson and Burgos, Simpson had a "regular pattern of unsupervised usage" of the vehicle such that he was its owner under MCL 500.3101(3)(*l*)(*i*)—

-6-

which, in turn, made him ineligible under MCL 500.3113(b) to receive PIP benefits for his injuries resulting from the May 2023 collision. *Ardt*, 233 Mich App at 691-692; see also *Abdulla*, ___ Mich at ___; slip op at 14 (explaining how this definition of ownership was written "to ensure that those who routinely possess and use vehicles in a proprietary manner are insured"). Contrary to plaintiffs' assertion on appeal, there is nothing in the record to suggest that Simpson's regular and unrestricted use of the vehicle would have ceased at any point before the 30-day statutory period had lapsed; rather, all record evidence indicates otherwise. Simpson's status as "owner" certainly would have been all the more clear if he, at the time of the collision, had actually had use of the vehicle for more than 30 days and/or had a written agreement evidencing his right to such use. Cf., e.g., *Abraham*, 342 Mich App at 479, 484-485 (concluding that the plaintiff's employer was an owner of the subject vehicle where it had "use of the vehicle for approximately six months before the accident" through "a continuing series of 28-day rental agreements"). For the reasons discussed, however, ownership under MCL 500.3101(3)(*l*)(*i*) requires neither of these things and, in light of the record evidence in this case, their mere absence does not create a genuine factual dispute regarding Simpson's ownership of the vehicle. We therefore see no error in the trial court's conclusion that Simpson was an "owner" of the uninsured vehicle within the meaning of MCL 500.3101(3)(*l*)(*i*) and, as a result, was ineligible under MCL 500.3113(b) to receive PIP benefits.

## IV.  PLAINTIFFS' RIGHT TO RECOVER PIP BENEFITS

Plaintiffs next argue that, even if Simpson constituted an "owner" of the vehicle and was therefore ineligible to receive PIP benefits, that would not justify summary disposition in defendant's favor because plaintiffs, as Simpson's healthcare providers, had "an independent and direct cause of action to recover PIP benefits" under MCL 500.3112. In support, plaintiffs primarily rely, as they did below, on *Mota-Peguero*, emphasizing its recognition that, because MCL 500.3112 "afford[s] healthcare providers a direct cause of action," those providers "no longer must stand in the shoes of an injured person to pursue a no-fault claim against an insurer." *Mota-Peguero*, 350 Mich App at 700.

Given the particular facts of this case, we disagree with plaintiffs' suggestion that *Mota-Peguero* is fatal to defendant's motion for summary disposition. The core holding of *Mota-Peguero* is that, when an insurer rescinds an insured's policy due to the insured's fraud in obtaining that policy, such rescission does not necessarily foreclose an innocent third-party provider from recovering, via a direct claim against the insurer under MCL 500.3112, for the provider's treatment of the insured; instead, a court must "balance the equities of rescission" to determine "whether . . . rescission is available as between" the insurer and the provider. *Id*. at 700-703. The central focus of *Mota-Peguero* was the recission of an insurance policy, and its holding was premised on an individual having obtained an insurance policy from an insurer prior to being in a motor vehicle collision, which the insurer then sought to rescind upon receiving a claim for coverage arising from that collision. See *id*. at 695-696. But that is not the situation here. Indeed, as Simpson admitted on his application for PIP benefits and as the parties do not meaningfully dispute, the vehicle in question was uninsured and Simpson had no automobile insurance policy at the time of the collision. Given that there was no insurance policy at issue in this case, we fail to see how plaintiffs' offered caselaw regarding the post-collision rescission of such a policy would control their entitlement to PIP benefits from defendant.

-7-

And while we agree with plaintiffs that MCL 500.3112 affords them their own direct cause of action to recover PIP benefits, we disagree that plaintiffs can maintain that direct claim in this case. MCL 500.3112 allows a "provider listed in [MCL 500.3157]" to "make a claim and assert a direct cause of action against an insurer, or under the [MACP] under [MCL 500.3171] to [MCL 500.3175], to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person." The providers listed in MCL 500.3157 include, in relevant part, "a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury *covered by personal protection insurance*[.]" MCL 500.3157(1) (emphasis added). For the reasons discussed above, the "accidental bodily injur[ies]" that Simpson suffered in the May 2023 collision were not "covered by personal protection insurance" under the no-fault act because Simpson was an owner of the vehicle at issue and there was no insurance on the vehicle at the time of the collision. *Id*.; see also MCL 500.3101(1) and (3)(*l*)(*i*); MCL 500.3113(b). It thus necessarily follows that plaintiffs, in treating Simpson after the collision, did not constitute a provider that "render[ed] treatment to an injured person for an accidental bodily injury covered by personal protection insurance." MCL 500.3157(1). As such, plaintiffs cannot, under the plain terms of MCL 500.3112, maintain their direct claim to recover PIP benefits for that treatment from defendant in this case. See also MCL 500.3172(1) (requiring that a claimant seeking PIP benefits through the MACP be "entitled to claim").[2]

## V. CONCLUSION

In sum, we see no genuine issue of material fact that Simpson was an "owner" of the uninsured vehicle and was therefore ineligible to recover PIP benefits for injuries resulting from the May 2023 collision. Nor do we see a genuine issue of material fact that plaintiffs are not entitled to recover PIP benefits for the treatment provided to Simpson following the collision. Accordingly, the trial court did not reversibly err by granting defendant's motions for reconsideration and summary disposition on that basis.

Affirmed.

/s/ Philip P. Mariani
/s/ Sima G. Patel
/s/ Brock A. Swartzle

---

[2] Plaintiffs stress that the trial court was not bound by the determination in Simpson's own action for PIP benefits that he was not entitled to recover such benefits. Nothing in this opinion, however, presumes otherwise or at all depends on the determination in that separate action. Nor should this opinion be taken to suggest that providers "entitled to claim" cannot bring a direct action to recover PIP benefits through the MACP, including when "[n]o personal protection insurance is applicable to the injury" or "[n]o personal protection insurance applicable to the injury can be identified." MCL 500.3172(1)(a)-(b). As discussed, MCL 500.3112 expressly allows for this. We hold only that MCL 500.3112 does not afford plaintiffs in this case an avenue to recover PIP benefits through the MACP for treatment of injuries that the no-fault act has expressly disqualified from coverage under the act.